**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**KEN EPSMAN**                                                                                    **PLAINTIFF**

**v.**                                                  **4:06CV00947-WRW**

**MARTIN-LANDERS, LLC d/b/a
MARK MARTIN FORD**                                                   **DEFENDANT**

**ORDER**

Pending is Defendant's Motion for Partial Summary Judgment (Doc. No. 31). Plaintiff has responded (Doc. No. 36) and Defendant has replied (Doc. No. 38). Plaintiff alleges breach of warranty under the Uniform Commercial Code ("U.C.C."),[1] violations the Arkansas Deceptive Trade Practices Act ("A.D.T.P.A."),[2] common law fraud, constructive fraud, and breach of contract.

Plaintiff contends that Defendant misrepresented or did not disclose the mileage, the length, and the weight of a vehicle Plaintiff purchased from Defendant. Plaintiff alleges he relied on Defendant's acts and omissions and was damaged as a result of that reliance.

For the reasons set forth below, Defendant's Motion for Partial Summary Judgment is GRANTED in part and DISMISSED in part.

---

[1] Ark. Code Ann. § 4-1-101 et seq.

[2] Ark. Code Ann. § 4-88-101 et seq.

**I. DISCUSSION**

    **A. Summary Judgment Standard**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[5] Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6] I must view the facts in the light most favorable to the party opposing the motion.[7] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[3]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[5]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6]*Id.* at 728.

[7]*Id.* at 727-28.

showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[8]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[9]

**B. Background**

Plaintiff alleges that Defendant advertised a 1995 Volvo race-car hauler as having 106,550 miles.[10] Jim Hague, Plaintiff's employee, visited Defendant's place of business, drove the race-car hauler, and visually inspected the vehicle.[11] Defendant's Buyers Guide that accompanied the vehicle read: "**AS IS - NO WARRANTY**. YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle."[12] On or around September 9, 2005, after Mr. Hague's inspection, Plaintiff purchased the vehicle from Defendant for $94,000.[13] On September 22, 2005, Plaintiff discovered that the race-car hauler had approximately 467,688 miles on it.[14] Plaintiff paid $13,682.59 for repairs to the vehicle and learned that the hauler is too long and too heavy to

---

[8]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9]*Anderson*, 477 U.S. at 248.

[10]Doc. Nos. 15 and 33, Ex. 1.

[11]Doc. No. 33, Ex. 1 and Ex. 3.

[12]Doc. No. 33, Ex. 2.

[13]Doc. Nos. 15 and 33, Ex. 1. Plaintiff identifies the purchased date as September 9, 2005. Doc. No. 15. Defendant identifies the purchase date as September 12, 2005. Doc. 31, Ex. 1. The question of fact about the date of purchase is not material to questions of law in this case.

[14]Doc. No. 15.

drive on the highway, and that it is not possible to correct the defects by redesigning the vehicle.[15] Plaintiff alleges he repeatedly requested Defendant offset the cost of the repairs or accept the return of the vehicle, but Defendant refused.[16]

### C. Warranties and the Exclusion of Warranties

Express warranties are affirmations made by a seller that become a part of the bargain.[17] A seller can create an express warranty without using the words "warranty" or "guarantee."[18] Implied warranties exist without any affirmation of the seller. The implied warranty of merchantability creates a warranty that the goods, sold by a seller who is a merchant of that type of goods, are "fit for the ordinary purposes for which such goods are used."[19] An implied warranty of fitness for a particular purpose arises where the seller has reason to know the particular purpose for which the goods will be used and the buyer relies on the seller's judgment in providing the good.[20] Both implied warranties of merchantability and implied warranties of fitness for a particular purpose can be excluded or modified.[21] All implied warranties are

---

[15]Doc. No. 15. Plaintiff alleges that the vehicle is eight inches too long to operate on the highway both in California, where the Plaintiff resides, and in Texas, where the vehicle is registered. *Id*. Plaintiff also alleges that the load on the steering axle exceeds allowable weight by over 1,300 pounds, in violation of the manufacturer's limitations and regulations. *Id*.

[16]*Id*.

[17]Ark. Code Ann. § 4-2-313 (2001).

[18]*Id*.

[19]Ark. Code Ann. § 4-2-314(2)(c).

[20]Ark. Code Ann. § 4-2-315.

[21]Ark. Code Ann. § 4-2-316(3)(a).

excluded from an item that is sold "as is."[22] Express warranties can not be negated or limited when the negation or limitation would be inconsistent with an existing express warranty.[23]

Any implied warranties made by Defendant in connection with the vehicle were excluded by the "as is" clause. Defendant's Buyers Guide read: "**AS IS - NO WARRANTY**. YOU WILL PAY ALL COSTS FOR ANY REPAIRS. The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Plaintiff alleges that the vehicle was sold with an implied warranty of fitness for the purpose of transportation on highways, and Plaintiff specifically notes that the vehicle's length and weight are in excess of regulations and limitations. Plaintiff's allegation would be appropriate if the vehicle had not been clearly marked for sale "as is." Plaintiff inspected the vehicle, but did not discover the defects. While the vehicle's defects may not be of the type a buyer generally considers when purchasing a race-car hauler, Plaintiff had notice that Defendant offered no warranty, he inspected the vehicle, and he bought it "as is."

Because Defendant clearly gave notice that the vehicle was offered for sale "as is," Plaintiff can not succeed on a breach of implied warranty claim. Accordingly, Defendant's Motion for Partial Summary Judgment is GRANTED in connection with any implied warranty.

---

[22]Ark. Code Ann. § 4-2-316(2), (3).

[23]Ark. Code Ann. § 4-2-316(1). See *Tenwick v. Byrd*, 9 Ark. App. 340 (1983) (no express warranty found where neither buyer nor seller knew exactly which parts were being sold - "as is" excludes only implied warranties); *Walt Bennett Ford, Inc. v. Morgan*, No. CA 87-250, 1988 Ark. App. LEXIS 1, at *3 (Ark. Ct. App. Jan. 6, 1988) (case remanded to trial court where question remained as to whether appellant made an express warranty - only implied warranties excluded by "as is"); *James River Equip. Co. v Beadle County Equip., Inc*., 646 N.W.2d 265 (D. S.D. 2002) (case remanded where seller made express warranty about number of hours turbines used, regardless of an "as is" clause).

In making this ruling, I note that Defendant allegedly made an express warranty about the mileage of the hauler. Plaintiff alleges that Defendant advertised that the hauler had traveled 106,550 miles and that this representation became a part of the bargain. Defendant can negate or limit the warranty only to the extent that the negation or limitation does not conflict with the express warranty. The language in Defendant's Buyers Guide assigning the responsibility of repairs to the buyer conflicts with Defendant's express warranty to the extent that repairs were necessary because of mileage above the 106,550 miles advertised by Defendant. Whether Defendant advertised the mileage as 106,550 miles and whether Plaintiff relied on that representation in purchasing the vehicle are questions of fact for a jury to decide. I find that the language in the Buyers Guide making the buyer responsible for repairs is limited to Plaintiff's harm or damage arising from the vehicle's length or weight, *i.e.* the implied warranties.

### D. The U.C.C. and Common Law Causes of Action

The U.C.C., as adopted by Arkansas, does not displace common law causes of action for fraud, constructive fraud, or breach of contract.[24] "Unless displaced by the particular provisions of this subtitle, the principles of law and equity, including . . . fraud . . . shall supplement its provisions."[25] There is not a provision in the U.C.C. displacing those causes of action.[26]

---

[24] See Ark. Code Ann. § 4-1-101 et seq., Ark. Code Ann. § 4-88-101 et seq.

[25] Ark. Code Ann. § 4-1-103.

[26] See Ark. Code Ann. §§ 4-1-101 et seq.

In connection with fraud and constructive fraud, the Arkansas Supreme Court has found that punitive damages for fraud are not barred by a revocation of acceptance under the U.C.C.[27] In *Thomas Auto Co. v. Craft*, the plaintiffs discovered that their recently purchased car had been damaged before they bought it, notified the defendant of their revocation of acceptance, and brought suit.[28] At trial, the plaintiffs were awarded double recovery -- compensatory damages for revocation of acceptance and compensatory damages for deceit.[29] On appeal, the appellees argued double recovery was permissible under Ark. Code Ann. § 4-2-721.[30] The Arkansas Supreme Court found that while double compensatory recovery is not permitted, punitive damages are available when there is proof of the elements of deceit as a basis of revocation of acceptance.[31] The Court held that punitive damages are available to "a claimant whose claim based on rescission or revocation of acceptance results in restitution and consequential or incidental damages."[32]

---

[27]See *Thomas Auto Co. v. Craft*, 297 Ark. 492 (1989).

[28]*Id*. at 494.

[29]*Id*. at 496.

[30]See *Id.* Ark. Code Ann. § 4-2-721 reads: "Remedies for material misrepresentation or fraud include all remedies available under this chapter for nonfraudulent breach. Neither rescission or a claim for rescission of the contract nor rejection or return of the goods shall bar or be deemed inconsistent with a claim for damages or other remedy."

[31]*Id.* at 498.

[32]*Id.* at 499.

Common law breach of contract exists as a cause of action so long as it is not displaced by a particular U.C.C. provision.[33]  In *Microsize, Inc. v. Arkansas Microfilm, Inc.*,[34] the appellee's complaint at trial pled: rejection, revocation of acceptance, breach of warranty, and rescission.[35]  At trial, the jury awarded the plaintiff the purchase price of the equipment, but failed to specify if the plaintiff was required to return the equipment to the defendant.[36] The appellant at trial argued that appellee's case was governed by the U.C.C. and objected to jury instructions on common law breach.[37] The court noted in dicta that the appellant was correct to so object; but since the appellant did not argue that point on appeal, the court did not take the analysis further.[38]  The Arkansas Court of Appeals in *Microsize* did not hold that common law breach of contract is displaced by the U.C.C.[39]

In its Motion for Partial Summary Judgment, Defendant makes the sweeping statement that under Arkansas law, common law claims are displaced by the U.C.C. Since neither a

---

[33]Ark. Code Ann. § 4-1-103. See *Scallon v. United States AG Ctr., Inc.*, 42 F. Supp. 2d (N.D. Iowa 1999) (court found that damages remedies under the U.C.C. may be supplemented by common law to permit recovery of nominal damages for breach of contract governed by the U.C.C.); *Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro*, 38 F.3d 1571 (11th Cir. 1994) (court allowed common law claim to supplement UCC claim); *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601 (7th Cir. 2001) (the U.C.C. allows supplementation by common-law principles unless displaced by provisions of the act).

[34]29 Ark. App. 49 (1989).

[35]*Id.* at 51-52.

[36]*Id.* at 51

[37]*Id.* at 51-55.

[38]*Id.* at 55.

[39]See *Microsize, Inc. v. Arkansas Microfilm, Inc.*, 29 Ark. App. 49 (1989).

common law action for fraud, constructive fraud, nor breach of contract is displaced by the U.C.C., Defendant's Motion for Summary Judgment in connection with Plaintiff's common law claims is DENIED.

**E. The U.C.C. and the A.D.T.P.A.**

The A.D.T.P.A. provides: "[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state."[40] There is no provision in the U.C.C. that would displace that provision.[41] There is no provision in the A.D.T.P.A. that makes a cause of action under that act inconsistent with a U.C.C. claim.[42]

Defendant argues that the A.D.T.P.A. is a statutory extension of common law and is displaced by the U.C.C. Defendant offers neither statutory nor case law to support its contention. Even if I found the A.D.T.P.A. to be an extension of common law, the U.C.C. does not displace common law causes of action. Defendant's Motion for Partial Summary Judgment in connection with Plaintiff's A.D.T.P.A. claim is DISMISSED.

## CONCLUSION

---

[40] Ark. Code Ann. § 4-88-107(b).

[41] See Ark. Code Ann. § 4-1-101 et seq.

[42] See Ark. Code Ann. § 4-88-101 et seq.

Defendant's Motion for Partial Summary Judgment is GRANTED in connection with Plaintiff's breach of implied warranty claims. Defendant's Motion for Partial Summary is DENIED with respect to Plaintiff's common law claims and A.D.T.P.A. claim.

IT IS SO ORDERED this 26th day of September, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE